**C. B. PORTERFIELD and Morris Margulis, Intervenors, Appellants,**

v.

**L. M. GERSTEL, Receiver of Metal Extrusions, Inc., Bankrupt, Appellees.**

No. 16423.

United States Court of Appeals
Fifth Circuit.

Nov. 21, 1957.

Joseph Gassen, Thomas H. Anderson, Miami, Fla., Sibley & Davis, Miami Beach, Fla., Anderson & Nadeau, Miami, Fla., for appellants.

Marx Faber, Harold Friedman, W. G. Ward, Ward & Ward, Miami, Fla., for bankrupt.

Feibelman & Friedman, Miami, Fla., for trustee.

Before HUTCHESON, Chief Judge, and TUTTLE and WISDOM, Circuit Judges.

WISDOM, Circuit Judge.

This hotly contested case is before us for the second time. Now, as in Porterfield v. Gerstel, March 30, 1955, 222 F.2d 137, the controlling question is whether the District Court for the Southern District of Florida erred in confirming an order of the Referee in Bankruptcy dismissing appellants' petition of intervention to vacate an order of adjudication of bankruptcy. The issue tried and determined in the negative both times below was whether Ben Marden, Sonny Marden, and J. J. Pass, who owned 50% of the stock of Metals Extrusions, Inc. and were three of the five members of the board of directors, fraudulently put the company into bankruptcy in order to freeze out the other stockholders and minority directors, Porterfield and Margulis (intervenors and appellants).

On the first trial, the referee decided against Porterfield and Margulis. In a short opinion, the referee held that the testimony did not bear out the charges of fraud. The district court confirmed the referee's order, without writing an opinion. On appeal, this Court reversed the District Court and remanded the case "with directions that the bankruptcy court conduct a further hearing to afford the trustee an opportunity to meet the prima facie case already made by the intervenors or in default of this to sustain the petition of intervenors to set aside the adjudication of voluntary bankruptcy and to take such further proceedings as may be consistent with this opinion." Porterfield v. Gerstel, 5 Cir., 1955, 222 F.2d 137, 143.

Appellants, pleased with these expressions in the first opinion, contend that essentially nothing new has been added

since the case was here before; that therefore we must reverse the district court again. There is no sound basis for this contention. On the first appeal we did "hold that the intervenors made out a prima facie case, and unless the proof already adduced is met by countervailing evidence, the intervention must be sustained". But this statement is only a part of the opinion. Immediately preceding this observation we were careful to say: "We, of course, do not imply that the facts alleged in the intervention are true". Again, the allegations of the intervenors, "*if proved,* would authorize a holding by the Referee that the adjudication should be vacated." We commented on the summary nature of the proceedings and the lack of evidence showing that the company's financial problems were responsible for the filing of the bankruptcy petition.

But now we have a different case: testimony from new witnesses, new testimony from witnesses who testified before, new exhibits, a completely different record, and new judgments from the referee and the district judge, each of whom wrote a careful opinion analyzing the evidence.

On the second trial, in compliance with the mandate of this Court, additional hearings were held: September 14, 1955; November 15, 1955; January 5, 1956; and January 12, 1956. Five new witnesses testified for appellees. (1) Bullick, an accountant, stated that he made an audit, commencing August 8, 1953, showing that "the bankrupt's cash position was very weak, dangerously so; that the shortage was permanent." (2) Lawley, a banker, testified in regard to credit negotiations by Marden. (3) Sickles, the company's bookkeeper, testified in regard to the company's financial straits and to Porterfield's knowledge of bills, and the checks used to pay bills.

Neither Marden testified in the hearings on the first case; both testified in this case. (4) Sonny Marden testified at length in support of appellees' position. He stated that he presented to Porterfield checks drawn on the $30,000 invested by the Mardens, and that Porterfield knew about the checks and the bills paid by such checks. (5) Ben Marden testified in regard to his unsuccessful efforts to establish a line of credit. On this testimony, we cannot say, as we did earlier, that "the company's financial problems really had nothing whatever to do with the filing of the voluntary bankruptcy petition." Porterfield v. Gerstel, 5 Cir., 222 F.2d 137, 142.

Certain exhibits, including checks and the minutes of the corporation, which were not in the record on the first appeal, are included in the record on this appeal. These exhibits and certain testimony tend to refute Porterfield's statements in the first case that he knew nothing about payment of bills from the Mardens' $30,000; that "they just paid the bills to embarrass us."

Appellants recalled as witnesses Porterfield, Margulis, and Faden. Two new witnesses, Sierra, a plant employee, and Joseph Gassen, one of the attorneys, testified for intervenors. There were some conflicts between Faden's testimony in the later hearings and the earlier hearings; and the referee commented, in his opinion, that he was "unable to say that Faden is a disinterested witness."

Twice the referee has had an opportunity to observe the witnesses as they testified, a crucial vantage point this Court does not have. On the second series of hearings the referee (and counsel, of course) had the benefit of knowing the doubts we expressed in our opinion on the first appeal. The referee is now doubly certain that he was right the first time.[1] "Reviewing this testimony

---

1. "Reviewing this case in its entirety, we find the following:

    "Here was a conservative small manufacturing enterprise whose business was to purchase raw aluminum and convert it into extruded products. It had reached a condition where it was insolvent in the equity sense; it could not pay its bills as they matured; it was running over drafts in the bank; it was borrowing from its officers; it was failing to pay its aluminum suppliers which would have cut

its entirety, we cannot say that the district court's findings were clearly erroneous. The judgment appealed from is

Affirmed.

**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**PEOPLES NATIONAL BANK OF CHICAGO, an Illinois Corporation,
Defendant-Appellee.**

**No. 12092.**

United States Court of Appeals
Seventh Circuit.

Nov. 29, 1957.

out any showing that the directors had preferred creditors, secluded assets *or*

Paul A. Sweeney, Chief, Appellate Section, Peter H. Schiff, Atty., U. S.

*were otherwise guilty of fraud,* dismissal of their complaint was proper.