520 F.2d 1098
 In the Matter of Arland Doyle BOYDSTON and Carolyn Mae
Conner Boydston, d/b/a Chateau De Monique Wig
Salon, Bankrupts.
SEARS, ROEBUCK & CO. and Neiman-Marcus, Appellants,
v.
Arland Doyle BOYDSTON and Carolyn Mae Conner Boydston, d/b/a
Chateau De Monique Wig Salon, Bankrupts, Appellees.
 No. 75-2334
 
 Summary Calendar.*
 United States Court of Appeals,
Fifth Circuit.
 Oct. 10, 1975.
 John Emmett, Harold C. Abramson, Dallas, Tex., for appellants.
 John E. Humphreys, Michael S. Sundquist, Dallas, Tex., for appellees.
 Appeal from the United States District Court for the Northern District of Texas.
 Before COLEMAN, AINSWORTH and SIMPSON, Circuit Judges.
 COLEMAN, Circuit Judge.
 
 
 1
 This appeal arises from the bankruptcy of Mr. and Mrs. Arland D. Boydston. The referee granted the husband's discharge over the objections of two of his creditors, Sears, Roebuck & Co. and Neiman Marcus. On review, the District Court affirmed. Appellants contend that the discharge should have been denied under § 17a(2) of the Bankruptcy Act, 11 U.S.C.A. § 35(a)(2), because the bankrupts were engaged in a scheme to obtain property on credit with the secret intention of not paying for it. Although Boydston's actions appear so highly questionable that if we were hearing this case in the first instance, we would be inclined to deny discharge, we are unable to say as an appellate tribunal that the referee's findings are clearly erroneous. Therefore, we affirm the Judgment of the District Court.
 
 
 2
 In November of 1969 Arland Boydston, a 40 year old Army Lt. Colonel, married Carolyn Conner. Their financial downfall began in March, 1970, when they borrowed $3,000 to start a wig business, the Chateau De Monique Wig Salon, in Mineral Wells, Texas. By September, the shop's business had sharply deteriorated because of the projected closing of nearby Fort Walters. At this time Boydston retired from the service, cutting his income by more than half, to $708.00 per month. Aside from his retirement income and the small amount of money the couple was taking in from the salon, the Boydstons had no other income. The bankrupt was also involved in a prospective low income housing project from which he hoped to make a windfall by sharing in the net profits. In January, 1971, the project fell through when FHA approval was denied, again because of the closing of Fort Walters.
 
 
 3
 Despite their strained financial condition, however, the Boydstons went on a spending spree which lasted from the latter part of August, 1970, until they filed their petition in bankruptcy on February 15, 1971. During this six month period they incurred almost $32,000 in new indebtedness, the overwhelming portion of which was for luxury items and nonessential personal expenses rather than for salvaging the wig business. Merchandise purchased included a new Cadillac, a mink coat, a very expensive shotgun, a housefull of new furniture, and $1300 in personal travel expenses. A $6000 bank loan ostensibly intended to acquire new inventory for the wig salon was diverted to the purchase of a new home in Dallas, and on several occasions personal financial statements submitted to creditors flagrantly failed to disclose a majority of their indebtedness. The substantial portion of the debts were incurred after the Boydstons were no longer able to meet existing obligations when due and the bankrupt had written at least two creditors requesting extension of payment deadlines.
 
 
 4
 During this period, $2,923.73 worth of personal merchandise was charged at Sears and $2,540.03 at Neiman Marcus. No payments were ever made on either account. Appellants claim that the factors detailed above clearly indicate a purpose to acquire merchandise on credit with no intention of paying for it. Sears also complains that, in completing a credit application with the store in November, Mrs. Boydston grossly overstated the wig salon's monthly earnings and omitted the family's major financial obligations in order to secure an extension of credit which otherwise would not have been granted. The application, however, contained only three blanks for listing present creditors.
 
 
 5
 Neiman Marcus thwarted Mrs. Boydston's discharge from any of her debts under § 14(c)(1) of the Bankruptcy Act by showing that she had altered documents pertaining to her bankruptcy for the purpose of deceiving the Court and had given perjured testimony concerning the exhibits. The referee found that there was no evidence to show that Mr. Boydston participated in or knew of these changes.
 
 
 6
 In mitigation of the husband's apparent disregard of his financial responsibilities, factors cited by the referee or which appear in the record include Boydston's contemplated business venture, the approach of the Christmas gift season, his lack of business experience, the fact that his wife made many of the purchases, particularly furniture and household goods, to replace items that had been used by his deceased first wife, and his testimony that he was unaware of the precarious nature of his financial situation or the possibility of bankruptcy until he spoke with an attorney in February. The bankruptcy judge had the opportunity to see and hear the Boydstons first hand, to weigh the credibility of all the witnesses, and to thoroughly examine the record. In his words, "The evidence offered impresses me more as reckless, irresponsible naivete on the part of a recently retired military man, who had just remarried, than cold, calculated, sophisticated planning by one bent on financial deception". Based on Sears and Neiman Marcus' failure to demonstrate Boydston's insolvency at the time the debts were incurred or to provide sufficient evidence of his subjective intent not to repay the debts, the discharge was granted.
 
 
 7
 The referee's findings of fact are binding upon the district judge and this Court unless they are clearly erroneous. Fed.R.Civ.P. 52(a); General Orders in Bankruptcy 47; Friendly Finance Discount Corp. v. Humphries, 5 Cir., 1972, 469 F.2d 643; Bazemore v. Stehling, 5 Cir., 1968, 396 F.2d 701; Porterfield v. Gerstel, 5 Cir., 1957, 249 F.2d 634; Phillips v. Baker, 5 Cir., 1948, 165 F.2d 578. In Spach v. Strauss, 5 Cir., 1967, 373 F.2d 641, 643, and Minella v. Phillips, 5 Cir., 1957, 245 F.2d 687, 690, we stated further that when the referee's determination has been approved by the district court, it should not be disturbed on appeal except for the most cogent reasons.
 
 
 8
 There is sufficient evidence in the record before us to sustain the original findings of fact. Boydston could feasibly have felt his financial slump was only temporary. Although he was unable to meet certain obligations as they came due, he did not try to permanently avoid payments, but merely postpone them. His reluctance to attempt to curb his wife's spending may be explained by his desire to stabilize his marriage rather than a secret desire to bilk creditors. The Sears credit application was not materially false since the store asked for the names of only three creditors, not for all major outstanding obligations. The wig salon had just begun its decline when Mrs. Boydston stated its earnings in the application, a statement which may have been more optimistic than intentionally deceptive. The bankrupts' expectancy of a windfall from the housing project, the fact that bankruptcy was not contemplated when they made the purchases, and their lack of business expertise all militate against denying a discharge.
 
 
 9
 Contrary to appellants' claims, the referee did not require them to prove the bankrupts' insolvency at the time the debts were incurred in order to sustain their case. Sears and Neiman Marcus had to demonstrate the Boydstons' insolvency or produce more convincing evidence of a subjective intent not to pay for credit purchases. Proving the first is merely one method of establishing the latter. Where hopeless insolvency at the time of the purchases makes payment impossible, fraudulent intent may be inferred. See In re Black, 373 F.Supp. 105 (E.D.Wis.1974); 1A Collier on Bankruptcy P 17.16, at 1640 (14th ed. 1973). In the opinion of the referee, appellants simply did not meet their burden in showing such an intent by insolvency or any other evidence.
 
 
 10
 The referee and district judge both noted that our decision in Davison-Paxon Co. v. Caldwell, 5 Cir., 1940, 115 F.2d 189, cert. denied, 313 U.S. 564, 61 S.Ct. 841, 85 L.Ed. 1523 (1941), would mandate a discharge in this case even if the Boydstons had no intention of paying for the merchandise. In that case we held that purchasing goods on credit with no present intention of paying for them was not embraced by the Act's proscription against obtaining property by false pretenses or representations. Debts created through credit purchases while concealing insolvency or inability to pay were found to be dischargeable. The rationale underlying Davison-Paxon has been severely eroded in the modern world of credit transactions and the decision has been the subject of much criticism. See, e. g., In re Black, supra; Collier, supra. We need not specifically reach this issue here, however, since we feel that the case is one for disposition under the clearly erroneous rule.
 
 
 11
 Affirmed.
 
 
 
 *
 Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 5 Cir. 1970, 431 F.2d 409, Part I