109 So.2d 34 (1959)
Ethel Ladd Hartley MARSH, as Administratrix of the Estate of John E. Hartley, deceased; Ethel Ladd Hartley Marsh, individually; and Clarence B. Marsh, her husband, Appellants,
v.
John L. HARTLEY, Louise H. Stewart and Mildred H. Gallagher, Appellees.
No. 720.
District Court of Appeal of Florida. Second District.
February 13, 1959.
Rehearing Denied March 5, 1959.
*36 Beardall, Gridley & Lewis, Orlando, for appellants.
Nixon Butt and Williams & Chapman, Orlando, for appellees.
KANNER, Chief Judge.
Appellants here question the correctness of the trial court's decision in awarding a final decree which declared null and void two deeds purportedly vesting in appellant and her late husband title to a house in Orlando. Prior to execution of these deeds, title to the house had been held only by John E. Hartley, who died in 1949. The children of John E. Hartley, appellees here, were plaintiffs in the trial court; their step-mother, second wife of Hartley, and her present husband, appellants here, were the defendants. The court further declared the subject property to have been decedent's homestead which on his death became vested in Ethel Ladd Hartley Marsh for life, with appellees as remaindermen.
From 1920 through a portion of 1939, John E. Hartley lived continuously in Orlando. In 1934 his first wife, mother of the appellees, died; and in 1935 Hartley purchased the house in which he and his family had been living. This house is the property involved in the present controversy. Also in 1935 he was married to Ethel Ladd, and he continued to reside in the Orlando home with his wife and two children by the former marriage until 1939, at which time he became involved in an incident resulting in his demotion by his employer, the Atlantic Coast Line Railway Company. He had been working for this company for many years, variously as a telegrapher and as a ticket, freight, and express agent. After he was demoted he moved with his famity, continuing in the employ of the railroad company, first to Arcadia, then respectively to Babson Park, St. Cloud, Loughman, and Davenport, all within the space of time from 1939 through the middle of the year 1944. At that time he moved back to the house in Orlando, continuing still in the employ of the railroad company, and there resided until his accidental death in 1949.
Decedent and his wife, while in St. Cloud, bought a house on contract there and moved into it some of their furniture from the home in Orlando. A few months later, in 1943, they sold this house in which they resided during their stay in St. Cloud. Due to abandonment by the railroad company of the St. Cloud station, they then moved to Loughman where Mrs. Hartley obtained a teaching position for the school year 1943-44 and where her husband continued working for the railroad company. The furniture which they had transported from the Orlando house was moved with them to each respective point of transit, finally back to the Orlando place when they themselves returned. Hartley was granted homestead exemption on the Orlando property from 1936 through 1949.
On November 2, 1943, Hartley and his wife conveyed the house in Orlando to J. Howard Huie, who, joined by his wife, on the same day and without ever taking possession of the property, reconveyed it to "John S. Hartley and wife as an estate by the entireties." Appellants contended in the trial court that if in fact the Orlando property was the homestead of the decedent prior to these deeds, he abandoned the same and the homestead status was terminated by Hartley's removal therefrom in 1939 and by his acts and conduct between that time and time of the execution of the deeds. Appellees, on the other hand, assert that their deceased father and their stepmother through such deeds attempted to transpose the property involved from its status as a homestead, under which they had an interest, to an estate by the entireties, through which their rights would be eliminated; that there had never been any cessation of the homestead status of the property; that the transfer of *37 the house through the deeds referred to was without consideration; and that the law prohibits such transfer as trespass on the rights of the children involved. Appellees state that their father at all times considered the Orlando house as his permanent abode and that he never had any intention of abandoning it as such.
The primary question posed for consideration by this court is whether the situation as here summarized resulted in abandonment of the homestead status by John E. Hartley.
A study of the record yields certain salient features other than those stated in the background summary of this opinion. The appellee children and their witnesses show that their father's hobby was woodwork and that he maintained a shop on the subject premises for pursuit of this hobby, returning regularly to spend many hours in it and to care for the property in general during the period of his absence while working for the employer railroad company in the various places mentioned. They say, further, that he evinced much pride and interest in the Orlando place and its upkeep, planting trees, flowers, and shrubs and constructing improvements on the premises. There is testimony by them that John E. Hartley refused to sell the Orlando property, declaring that it was his home and that he desired to keep it, and also testimony that he indicated that he contemplated returning to Orlando. As has been stated, he did return to his Orlando place to spend the last five years of his life. Contrary evidence is to the effect that during his absence, Hartley rented out the home, composed of two dwelling units, that while in St. Cloud he expressed the intention to stay there permanently and establish his home there, and that the actions of himself and his wife, their participation in community affairs and their affiliations there, as well as their activities in the other communities, substantiated this intention. As may be seen, the evidence offered to bolster each side presents conflicting objectives by Hartley as to the place of his permanent residence.
It is clear from the record, however, that Hartley's moving away from the Orlando home was the product of exigency created by the incident leading to his demotion, that his removal to other localities under these circumstances was an economic necessity, and that he went to various posts of duty where he could procure work with the railroad company, not merely to one place where he became settled and established as one would do in the process of changing his permanent place of abode. It has also been shown that Hartley maintained his wood shop at the Orlando house and went there frequently to pursue his hobby, as well as to care for and improve the property, and that he did return after about four years' absence in various places to spend the rest of his life in the Orlando place. It is not disputed that the 1943 deeds, the effect of which was abrogated by the final decree, were so-called conduit transactions, without consideration, to convert the property from its homestead status to that of an estate by the entireties. Nor is there conflict in the evidence showing that homestead exemption from taxes was granted Hartley on the property continuously from 1936 through 1949, the year of his death. Noteworthy is the fact that from 1920 through 1939, a period of nineteen years, his residence in Orlando was uninterrupted and continuous, and that during a period of twenty-nine years, Hartley lived in Orlando continuously except for about four years when it was necessary for him to go elsewhere for economic reasons, meanwhile retaining his house there and returning to it as soon as he could.
Under the probate statute, when the owner of a homestead dies and is survived by his wife, the homestead inures to the benefit of the widow as a life estate, while the remainder inures to his lineal descendants in being at the time of his death. Section 731.27, Florida Statutes, F.S.A.
In considering the question of whether a homestead status has been acquired or whether it has been abandoned, a *38 court in its determination must be guided by certain fundamental principles. The constitutional and statutory provisions concerning homesteads should be interpreted in the liberal and beneficent spirit in which they were conceived and enacted in the interest of the family home. Olesky v. Nicholas, Fla. 1955, 82 So.2d 510, and Read v. Leitner, 1920, 80 Fla. 574, 86 So. 425. The question of whether there has been an abandonment of a homestead should be determined by a consideration of all the pertinent facts and circumstances of each individual case. Lanier v. Lanier, 1928, 95 Fla. 522, 116 So. 867; Nelson v. Hainlin, 1925, 89 Fla. 356, 104 So. 589; City of Jacksonville v. Bailey, 1947, 159 Fla. 11, 30 So.2d 529; and Olesky v. Nicholas, supra. Where a homestead has been acquired, the homestead status continues unless it is abandoned or alienated in the manner provided by law. Clark v. Cox, 1920, 80 Fla. 63, 85 So. 173; and Wilson v. Florida Nat. Bank & Trust Co. at Miami, Fla. 1953, 64 So.2d 309.
Where the head of the house finds it necessary to absent himself from the homestead property for reasons of livelihood or family responsibilities for extended periods of time, this will not necessarily create an abandonment of the homestead so long as there remains his intention to return and so long as there is no clear intention to abandon the homestead right. In the case of Read v. Leitner, previously cited herein, quoting from page 426, of 86 So. the Supreme Court stated the factual situation:
"It appears that P.R. Read owned in De Soto county, Fla., not exceeding 160 acres of land not within the limits of any incorporated city or town, upon whch he lived with his family, consisting of a wife and children; that he moved with his family to the city of Arcadia in De Soto county, where he remained some time engaged in business, his children attending school in the city; that subsequently he moved with his family back to the homestead in the country; that later he again moved with his family to the same city, where for several years he engaged in business and his children attended school; that during the latter period he voted in the city, but frequently visited the country place formerly occupied as his homestead and gave periodical attention to the upkeep of the place, which was occupied by a tenant, at least a portion of the time, during which period the house that had been occupied by the family burned and another house was erected on the place for residence purposes and so occupied; that, during the time Read and his family were living in the city in a house owned by his wife, judgments were obtained against him, but before executions under the judgments were levied on the said country place and before a sale of the place under the judgments and executions, Read with his family moved again to and occupied as his home the country property that had been his place of actual residence and homestead place, he testifying that he never intended to permanently abandon the place as his home."
Under these facts the trial court held that the homestead had been abandoned, but this was reversed by the Supreme Court. The opinion held that once a homestead has been occupied in good faith, it is not essential for such occupancy to be continuous, provided the intent to return to the homestead continues and the absence therefrom is reasonably shown to be for the temporary benefit of the family. The factual situation thus related bears a marked similarity to the circumstances in the present case.
The case of Olesky v. Nicholas, cited above, is also similar in principle. The Olesky case concerned a property owner who had used a part of his homestead as a small neighborhood sundry store; and finding it necessary to close the store, he ceased to operate it for several years, during which time he worked for another man to support his family, thus leaving his own small store vacant. He subsequently reopened the vacant *39 portion of the premises and resumed operation of his sundry store. The chancellor held that he had not abandoned that part of the premises as homestead property so as to subject it to judgment liens, and this ruling was affirmed by the Supreme Court.
Temporary absence of the head of the household for reasons of health, pleasure, or business will not deprive the homestead of its protected status, unless there was the aim on his part to forsake it permanently. Hillsborough Inv. Co. v. Wilcox, 1943, 152 Fla. 889, 13 So.2d 448; L'Engle v. Forbes, Fla. 1955, 81 So.2d 214; and Olesky v. Nicholas, supra. Nor will temporary rental of the homestead property necessarily impose the status of abandonment where the intent to return is present. See Davis v. Miami Beach Bank & Trust Co., 1930, 99 Fla. 1282, 128 So. 817; and City of Jacksonville v. Bailey, cited previously.
As to the purported attempt by the homestead owner to create of the property an estate by the entireties through the 1943 deeds, the Florida Supreme Court has held that such conversion by conveyance through a conduit medium of transfer, not based on a valuable consideration, would operate to nullify the rights of the homestead owner's children and is ineffectual as a conveyance of title, since it does not constitute an alienation of the homestead real estate as contemplated by the constitutional provision. Norton v. Baya, 1924, 88 Fla. 1, 102 So. 361; Jackson v. Jackson, 1925, 90 Fla. 563, 107 So. 255; Bess v. Anderson, 1931, 102 Fla. 1127, 136 So. 898; and Norman v. Kannon, 1938, 133 Fla. 710, 182 So. 903.
The cause was before the chancellor, who heard the testimony and reviewed the evidence, weighing the conflicting features and evaluating the various components of the controversy. In equity it is an elementary tenet that all presumptions favor the rulings of the chancellor unless error is made clearly apparent.
Under the circumstances of this case as here summarized, this court cannot conclude that reversible error was shown to have been committed by the trial court, nor did prejudicial error appear with respect to other points raised by appellants and not herein specified. Accordingly, the judgment of the trial court is affirmed.
Affirmed.
ALLEN and SHANNON, JJ., concur.