In the Matter of Rodger A. Monson and Linda S. Monson, Bankrupts.

Rodger A. MONSON and Linda S. Monson, Bankrupts, Appellants,

v.

FIRST NATIONAL BANK OF BRADENTON, Appellee.

No. 74-1133

Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

July 5, 1974.

Robert H. Schultz, Bradenton, Fla., for appellants.

William T. Keen, Tampa, Fla., for appellee.

Don M. Stichter, Tampa, Fla., for other interested parties.

Before GEWIN, GODBOLD and CLARK, Circuit Judges.

GEWIN, Circuit Judge:

Appellants Rodger Monson and Linda Monson, husband and wife, were adjudicated bankrupts on March 22, 1972, pursuant to voluntary petitions. The trustee subsequently filed his report of exempt property, including therein the home in Bradenton, Florida in which

* Rule 18, 5th Cir. See Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 5th Cir. 1970, 431 F.2d 409, Part I.

Rodger Monson and Linda Monson had continuously resided from 1968 until marital discord prompted their separation in July of 1971. At that time, the latter, accompanied by their two children, moved to Kentucky. In an attempt to effect a reconciliation, Rodger Monson followed suit. Because at the time the petition was filed, appellant and his wife had been absent from the claimed exempt property, a creditor, the First National Bank of Bradenton, interposed an objection to the trustee's report of exempt property. Both the referee and the district court upheld the Bank's contention that the Monsons had abandoned their homestead exemption. It is the district court's determination that appellants contest on appeal, and that we reverse.

The record consists of evidence adduced at two hearings conducted before the referee in bankruptcy. These hearings revealed, as was indicated above, that marital difficulties had befallen the Monsons in the summer of 1971. Mrs. Monson's move to Kentucky was accompanied by her filing in August of 1971 of a petition to dissolve the marital bonds. This petition was followed in September of 1971 by a pre-dissolution agreement in which the parties agreed to live apart and to continue to do so. Rodger Monson contested the petition for divorce. Upon relocation in Kentucky at the residence of her parents, Mrs. Monson enrolled her children in the Kentucky public schools and matriculated at Western Kentucky University.

The pre-dissolution agreement, however, was of short duration, for in October of 1971, Rodger Monson left Bradenton and moved to Kentucky in order to be near his family. He testified that he and his wife reconciled their marital difficulties in the fall of 1971. They were never divorced. The reconciliation thus effected, the Monsons continued to live in Kentucky until after the petition for voluntary bankruptcy was filed. Rodger Monson, a traveling salesman operating in Tennessee, Alabama, Georgia and North Florida, spent the weekends with his family during their sojourn in Kentucky and traveled on the road during the week. Mrs. Monson attended the university, thereby qualifying herself to receive a college degree in May of 1972. Both Rodger and Linda Monson stated that she completed her degree requirements in order to enable her to obtain attractive employment upon their return to Florida, and thereby help the family financially. Indeed, the Monsons returned to their Brandenton home immediately after a degree was conferred upon her in May of 1972. Significantly, however, despite this evidence of reconciliation, the divorce proceedings were not terminated until the Monsons returned.

Several additional facts, relevant to the abandonment issue, appear in the record. First, both Rodger and Linda Monson retained their licenses and remained registered to vote in Florida. Second, during their absence they made no attempt to lease or sell the Brandenton home. Indeed, one unsolicited offer to purchase was rejected. Third, Rodger Monson continued receiving his mail in Brandenton and continued maintaining the lawn and shrubbery on the property. Fourth, even throughout their abbreviated separation, he supported his wife and two children. Finally, prior to the filing of the petition for voluntary bankruptcy, Linda Monson submitted an application for employment to the state of Florida.[1]

The facts are not in dispute. The issue to be resolved is a legal one involving the correct application of Florida

---

1. We would note that Mrs. Monson's automobile continued to be registered in Florida. While in Kentucky, Mr. Monson purchased an automobile, financed it through a banking institution in Taylor County, Kentucky, and registered it in that state. Rodger Monson explained that he purchased and registered the vehicle in Kentucky because as a result of his bankruptcy, he could not obtain credit in Florida. His first cousin was the president of the Kentucky bank which enabled him to purchase the vehicle.

law to uncontroverted facts. The referee stated the issue as follows:

"The objective and hard facts germain (sic) to this controversy are not in dispute. As a matter of fact, they were established by stipulation of the parties. The parties differ, however, on the legal significance of these facts and particularly draw different conclusions and inferences from these facts."

In the face of the aforementioned evidence, the referee determined that the homestead exemption for the Brandenton residence had been abandoned. He placed particular emphasis on Brown v. Hutch, 156 So.2d 683 (Fla.App.1953), construing this decision to mandate continuing communal living by at least two individuals in such circumstances that one is regarded as the person in charge, for the exemption to exist. The district court endorsed the referee's disposition, merely summarizing the relevant evidence and stating its conclusion that the referee's determination that the homestead had been abandoned could not be deemed clearly erroneous.

## II

■■ It is axiomatic that to determine the availability of exemptions, the bankruptcy court must look to state law.[2] Myers v. Matley, 318 U.S. 622,

625, 63 S.Ct. 780, 87 L.Ed. 1043, 1044 (1943); Long v. Hayslip, 227 F.2d 555, 556 (5th Cir. 1955); In re Jackson, 472 F.2d 589, 590 (9th Cir. 1973); 1A Collier on Bankruptcy, § 6, p. 876 (14th ed. 1973). And if the governing principles are correctly applied by the referee and the district court, an appellate court cannot overturn findings of fact unless they can be deemed clearly erroneous. This court delineated the authority allocated to the referee, the district court and the Court of Appeals, and the standard of review appropriate at each stage of bankruptcy proceedings in Porterfield v. Gerstel, 249 F.2d 634, 636 (5th Cir. 1957), where we stated:

"On review to the District Court, the District Judge is required to accept the findings of fact made by the referee, unless they are clearly erroneous. Phillips v. Baker, 5 Cir., 1948, 165 F.2d 578, 581.

\* \* \* \* \* \*

The rule guiding district courts has its analogue in the Circuit Court. 'The district judge is required to accept the findings of fact made by the Referee unless clearly erroneous. Bankruptcy General Order 47, 11 U.S.C.A., following section 53. Such is the rule which governs us with respect to findings of the district court. Rule 52(a), Fed.Rules Civ.Proc., 28 U.S.C.A.' Frazier v. Ash, 5 Cir., 1956, 234

2. The Florida homestead exemption is set forth in Fla.Const. art. 10, § 4 F.S. (1970):

"Homestead—exemptions

(a) There shall be exempt from forced sale under process of any court, and no judgment, decree or execution shall be a lien thereon, except for the payment of taxes and assessments thereon, obligations contracted for the purchase, improvement or repair thereof, or obligations contracted for house, field or other labor performed on the realty, the following property owned by the head of a family:

(1) a homestead, if located outside a municipality, to the extent of one hundred sixty acres of contiguous land and improvements thereon, which shall not be reduced without the owner's consent by reason of subsequent inclusion in a municipality; or if located within a municipality, to the extent of one-half acre of contiguous land, upon which the exemption shall be

limited to the residence of the owner or his family;

(2) personal property to the value of one thousand dollars.

(b) These exemptions shall inure to the surviving spouse or heirs of the owner.

(c) The homestead shall not be subject to devise if the owner is survived by spouse or minor child. The owner of homestead real estate, joined by the spouse if married, may alienate the homestead by mortgage, sale or gift, and, if married, may by deed transfer the title to an estate by the entirety with the spouse. If the owner or spouse is incompetent, the method of alienation or encumbrance shall be as provided by law."

Subsequent to the decision of the referee, the exemption provision was amended. The amendment does not, however, affect this litigation. See Fla.Const. art. 10, § 4 (Supp.1974–75).

F.2d 320, 326. This Court has held many times that when the district judge has approved the referee's findings, the Court of Appeals will not interfere with the decision unless error is clearly demonstrated."

In this case, the district court apparently relied upon the referee's assessment of the applicable Florida law. Beyond alluding to the standard of review prescribed in Porterfield v. Gerstel, *supra*, the district court cited no case law. Hence, it is the referee's decision that we must examine in order to determine whether Florida law was correctly applied.

The referee attributed paramount significance to Brown v. Hutch, 156 So.2d 683 (Fla.Ct. of App.1963) and Barlow v. Barlow, 156 Fla. 458, 23 So.2d 723 (1945). Our interpretation of these cases conflicts with that of the referee.

■ Brown v. Hutch, *supra,* was construed to hold that the presence of communal living is a precondition to a finding that a homestead exemption exists. We disagree, and quote the relevant portion of the language from that decision, 156 So.2d at 685:

"For determination of the existence of a family relationship [for homestead purposes], there are, in Florida, two basic recognized tests to be met, *either singly or in combination:* (1) a legal duty to maintain arising out of the family relationship; (2) a continuing communal living by at least two individuals under such circumstances that one is regarded as the person in charge." (emphasis added)

Clearly, the italicized words indicate that communal living is not essential to the availability of the exemption. *See also* Vandiver v. Vincent, 139 So.2d 704, 709 (Fla.Ct. of App.1962) ("It is not necessary that any dependent reside with the head of the family on the homestead property. But if not, the head of the family must not only be obligated to, but must actually support such dependent." (citations omitted)). That our interpretation of the language in Brown v. Hutch, *supra,* comports with

the view of the Florida Supreme Court is witnessed by the fact that in Lockhart v. Sasser, 156 Fla. 339, 22 So.2d 763 (1945), decedent's property was deemed to be embraced by the homestead exemption despite the fact that he and his wife had been separated.

We also disagree with the import attributed to Barlow v. Barlow, *supra*. In that case, the Florida Supreme Court rejected the homestead claim of a wife who, two weeks before her husband died, had left the family home for "keeps," taking her belongings with her. The death of her husband when coupled with her abandonment of the family home, left no one available to claim the exemption. As Lockhart v. Sasser, *supra*, indicates, however, a wife's mere departure from the family home does not frustrate the homestead claim.

■ Having discerned that error was committed by the referee, and by the district court through its unarticulated but yet implicit reliance upon the referee's statement of the law, we proceed to set forth the applicable Florida law. Initially, we note the repeated admonition by Florida courts that "[t]he homestead exemption laws should be interpreted liberally and so as to shelter and preserve the family and family home so long as they are not interpreted in such manner as to become an instrument of fraud." Vandiver v. Vincent, *supra* at 139 So.2d at 709. *See* Quigley v. Kennedy & Ely Insurance, Inc., 207 So.2d 431, 432 (Fla.S.Ct.1968); Olesky v. Nicholas, 82 So.2d 510, 512 (Fla.S.Ct.1955); Marsh v. Hartley, 109 So.2d 34, 38 (Fla.Ct. of App.1959). Exceptions to the homestead exemption should be strictly construed. Quigley v. Kennedy & Ely Insurance, Inc., *supra*. To this end, the Florida courts have held that mere absence from the household, when necessitated by health, *see* Saint-Gaudens v. Bull, 74 So.2d 693 (Fla.S.Ct. 1954), financial, *see* Olesky v. Nicholas, *supra*; Marsh v. Hartley, 109 So.2d 34, 38 (Fla.Ct. of App.1959), or familial concerns, *see* Poppell v. Padrick, 117 So. 2d 435 (Fla.Ct. of App.1960), does not

effect an abandonment of the homestead exemption.

In the instant case, Mrs. Monson's departure to Kentucky, for whatever reason, did not vitiate the status of the Bradenton home as homestead property as long as Mr. Monson continued, as he did, to support her and their children. Such is the thrust of our reading of Brown v. Hutch, *supra*, and Lockhart v. Sasser, *supra*. Hence, the only question is whether his attempt to resurrect the marriage, entailing as it did, his temporary movement to Kentucky, changes the homestead status. We conclude that it does not.

In Poppell v. Padrick, 117 So.2d 435 (Fla.Ct. of App.1960), the court held that a husband and wife who had absented themselves from their homestead in order to insure that the husband's widowed mother would not live alone did not abandon the homestead. There, as in the instant case, the household furnishings remained on the claimed homestead property and the husband and wife remained registered to vote in the precinct in which the homestead property was situated. In addition to relying on these indicia of an intent to return, the court noted that "[i]t is not unnatural for a son to desire that his mother not live alone." Poppell v. Padrick, *supra* 117 So.2d at 437. Manifestly, it is no less natural for a husband to desire to reconcile marital differences with his wife, even if reconciliation entails a temporary absence from the home in which he lives.

Moreover, it is eminently clear that Mr. Monson, and Mrs. Monson after settlement of their differences, possessed an intent to return to Bradenton. The household was left intact. No attempt was made to dispose of the property. They retained their licenses and eligibility to vote in Florida. Moreover, the reason for their delayed return and the belated dismissal of the divorce proceedings was in no way incompatible with their avowed intent to return. In view of their dire financial condition, it seems perfectly reasonable for Mrs. Monson to have finished her college education and thereby enhance her ability to obtain gainful employment. Thus, we conclude that on the basis of the applicable Florida law,[3] the Monsons cannot be deemed to have abandoned their homestead exemption.

Reversed.

---

3. The extreme reluctance of Florida courts to hold the exemption abandoned is evidence in Marsh v. Hartley, 109 So.2d 34 (Fla.Ct. of App.1959). There, John Hartley lived on the claimed homestead property in Orlando from 1935–1939, but as a result of a job demotion, moved to 5 different towns from 1939–44. In one of the towns, St. Cloud, he purchased a house, furnished it with furniture from the Orlando home and announced his intention to remain. Moreover, during his absence from Orlando, Hartley rented his home. The court nevertheless concluded that no abandonment had taken place. The assertion of abandonment in the instant case rests on a decisively weaker reed.