**In re John Leroy McDONALD, Debtor.**

**Bankruptcy No. 89–00021–BKC–TCB.**

United States Bankruptcy Court,
S.D. Florida.

May 1, 1989.

See also, Bkrtcy., 98 B.R. 1015.

Ronald E. Jones, West Palm Beach, Fla., for creditor Nancy McDonald.

Douglass E. Wendel, Palm Beach, Fla., for trustee.

Leslie Gern Cloyd, West Palm Beach, Fla., for trustee.

## ORDER ON EXEMPTIONS

THOMAS C. BRITTON, Chief Judge.

The trustee's objections (CP 13) to the debtor's claimed exemptions were heard March 21. The trustee has abandoned his objection (¶ 4) that the actual value of the personal property selected for the Florida $1,000 personal property exemption exceeds the debtor's valuation of the property.

His remaining objections are (1) whether the partial proceeds from the sale of the debtor's former homestead remain exempt, and (2) whether the debtor's pension plan is exempt. I now sustain both objections.

### The Homestead Claim

[1] The debtor's homestead on South Ocean Boulevard in Palm Beach was sold for $390,000 on March 31, 1988. He netted $342,599. Part of those proceeds is invested in a bank certificate of deposit, and some more is invested in bonds in a broker's account. On the date of bankruptcy, January 4, 1989, the CD was worth $103,772 and the bond account was worth $97,507.

The debtor claims now, a year later, that both investments continue to be shielded from creditors by Florida's homestead exemption under the rule announced in *Orange Brevard Plumbing & Heating Co. v. La Croix*, 137 So.2d 201, 206 (Fla.1962). The Supreme Court of Florida held that the proceeds of a voluntary sale of a homestead temporarily retain their exempt status if the proceeds are kept separate, *and:*

"*if, and only if,* the vendor shows by a preponderance of the evidence an abiding good faith intention prior to and at the time of the sale of the homestead to reinvest the proceeds thereof in another homestead within a reasonable time." (Emphasis added).

The funds in question were a part of the proceeds from the sale of the Ocean Boulevard homestead and they have not been commingled with other money, but I find that the debtor did not intend to and does not now intend to reinvest *these funds* in his present new homestead. As the Florida court made clear:

"only *so much* of the proceeds of the sale as are intended to be reinvested in another homestead may be exempt under this holding." *Id.* at 206.

This finding is based upon the testimony of the debtor's fourth wife, Nancy, who was married to him when the Ocean Boulevard home was sold and when, 12 days after that closing, they contracted to buy the debtor's present, new homestead on Ibis Isle, Palm Beach. The closing on that property was on June 9, 1988 at a price of $175,000, 90% of which was paid in cash from the proceeds of the first sale.

She explained that after they had contracted to sell their first home and a month before the closing, they had made a $500,000 offer to buy a more expensive house, but when their offer was rejected they both decided to change their lifestyle, moving into a more modest home and investing the balance of the proceeds so they would have additional money to live on, travel and invest, rather than tie up all of the cash in a larger house.[1]

I do not overlook the debtor's contrary testimony that the Ibis Isle home was intended to be a temporary dwelling and that he intended, and still intends, to reinvest the disputed funds in a future homestead. The extensive modifications and improvements made immediately to the Ibis Isle house are inconsistent with the debtor's testimony. The trustee's evidence is more persuasive. The debtor has established his homestead at the Ibis Isle residence he occupies. As the Florida court has made clear, the debtor has the burden of proof as to his intent. He has failed to carry that burden, and these two investments are not entitled to exemption.

### The Pension Plan

■ The debtor has claimed as exempt his pension plan of which he is the sole trustee and sole beneficiary. In accordance with the holding in *In re Lichstrahl*, 750 F.2d 1488, 1490 (11th Cir.1985), this

---

1. The debtor and Nancy were divorced January 9, 1989.

plan clearly would not qualify as a spendthrift trust excluded from the bankruptcy estate under 11 U.S.C. § 541(c)(2). However, the State exemptions available to the debtor include the recently enacted *Fla. Stat.* § 222.21(2)(a) (1987) exemption for retirement or profit-sharing benefits, if the requirements of that statute are met.

The statute provides that:

"(2)(a) Except as provided in paragraph (b), any money or other assets payable to a participant or beneficiary from, or any interest of any participant or beneficiary in, a retirement or profit-sharing plan *that is qualified under s. 401(a), s. 403(a), s. 403(b), s. 408, or s. 409 of the Internal Revenue Code of 1986, as amended,* is exempt from all claims of creditors of the beneficiary or participant." (Emphasis added.)

This statutory exemption applies to any proceeding filed on or after October 1, 1987. It is applicable here.

Neither party has cited a case decided under this provision and I have found none.

The trustee does not dispute the plan's qualified status as of December 1980, based on an IRS letter. But the trustee asserts that it "does not believe that the plan is presently qualified under the Internal Revenue Code, as is required by Florida Statutes." The trustee's Memorandum (CP 32a Ex. A) points to various defects. The ground for the objection is that the operation of the plan after December 1980 through transactions involving the debtor and third parties now disqualify the plan.

The debtor's evidence of the plan's qualification is his own testimony (Ex. 1 at p. 16) and the IRS approval letter which does not express an opinion on the current operation of the plan. The debtor has testified that he has no records for the pension plan going back beyond one year. He has borrowed money from the plan at least twice, using the borrowed funds for improvements to his home.

The debtor's argument, which relies upon a Florida Bar Journal article [2], fails to address the disputed factual issue of qualification of the plan. I am convinced by the trustee's argument that without proof of its current qualification under § 401(a) of the Internal Revenue Code, the exemption has not been properly claimed.

The debtor now also argues, alternatively, that 80% of the assets of the plan are held in annuity contracts and therefore exempt under *Fla.Stat.* § 222.14. The trustee has not yet addressed that issue. I do not decide it here.

Under B.R. 4003(c), the trustee has the burden of proof that the exemption is not properly claimed. This burden has been met by the trustee with respect to the claimed *Fla.Stat.* § 222.21 exemption.

DONE and ORDERED.

---

**2.** Boggs and Barber, Tax Law Notes, *New Florida Statute Protects Retirement Plan Assets from* *Claims of Creditors,* The Fla.B.J., Nov. 1987, at 51.