**In re Scott K. LUTTGE, Debtor.**

**Bankruptcy No. 96–32462–BKC–PGH.**

United States Bankruptcy Court, S.D. Florida.

Jan. 6, 1997.

Joseph R. Cook, Hunt, Cook, Riggs, Mehr & Miller, Boca Raton, FL, for debtor.

Michael R. Bakst, Trustee, West Palm Beach, FL.

## MEMORANDUM DECISION AND ORDER

PAUL HYMAN, Jr., Bankruptcy Judge.

THIS MATTER came before the Court on October 31, 1996, upon the Trustee's Objections to Exemptions filed by Daniel Bakst, the Chapter 7 Trustee. The issues before the Court are whether the Debtor's claimed exemptions relating to homestead and a Paine Webber SEP/IRA account are proper under applicable law. The Court, having heard the testimony, examined the evidence presented, observed the candor and demeanor of the witnesses, and considered the arguments of counsel, makes the following findings of fact and conclusions of law.

### A. HOMESTEAD EXEMPTION

### FINDINGS OF FACT

In 1992, the Debtor, Scott K. Luttge (the "Debtor"), and his former wife jointly purchased and owned real property located at 6221 N.W. 23rd Way, Boca Raton, Florida (the "Property"). The Property was purchased as their primary residence and qualified as exempt homestead pursuant to art. X, section 4, of the Florida Constitution. The Debtor and his former wife occupied the Property until March of 1995, when the Debtor's wife commenced divorce proceedings and obtained a temporary restraining order preventing the Debtor from entering the premises. At that time, the Debtor's wife physically removed all of the Debtor's belongings from the marital residence and changed the locks. Since March of 1995, the Debtor has resided at various rented properties in or near Boca Raton, Florida.

On May 19, 1995, a Florida state court granted the Debtor's former wife the temporary and exclusive right to occupy the marital residence during the pendency of their divorce proceedings. A Final Judgment of Dissolution of Marriage was subsequently entered on January 24, 1996, which continued the wife's exclusive right to occupy the Property until it could be sold. The state court's Final Judgment ordered that any proceeds

from the sale of the Property be divided between the Debtor and his former wife. The Property has not been sold and therefore the Debtor has not received any proceeds.

The Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code on June 17, 1996. At the hearing on the Trustee's objections, the Debtor testified that he is financially unable to purchase a replacement homestead without the proceeds from the sale of the Property. The Debtor acknowledged that he had received an offer to buy the Property but that he rejected the offer as being too low. The Debtor further testified that the uncertainty arising from the Trustee's objection has also impeded his ability to purchase a replacement homestead. The Debtor stated that he intends to comply with the state court's order to sell the Property and invest the proceeds in a replacement homestead.

### CONCLUSIONS OF LAW

The Trustee contends that the Debtor abandoned the Property in March of 1995 and thus can no longer claim it as exempt homestead under Florida law. At the hearing, the Trustee further argued that the Debtor has no intention of purchasing a new qualifying homestead. In support, the Trustee points to the fact that the Debtor, just prior to filing bankruptcy, renewed his apartment lease for an additional year. The Trustee further maintains that the Debtor's rejection of the offer to buy the property is additional evidence the Debtor's lack of intent. By contrast, the Debtor contends that he did not voluntarily abandon the Property and, further, that he intends to use his share of the proceeds from the eventual sale of the Property to purchase a new homestead.

It is an issue of fact whether abandonment, sufficient to strip a property of its homestead character, has occurred in a particular case. *McGann v. Halker,* 530 So.2d 440 (Fla.Dist.Ct.App.1988). In the instant case, the Court finds that the Debtor did not voluntarily abandon his homestead because the state court's orders granted the Debtor's former wife the right to the exclusive use and possession of the Property until it is sold.

Moreover, the Debtor would have been in violation of the state court's order had the Debtor attempted to remain at the Property. Consequently, the Debtor's absence from his marital residence does not constitute abandonment. Furthermore, the Debtor's rejection of the offer to purchase the Property does not affect this Court's conclusion that the Debtor did not abandon the Property. Accordingly, the Debtor is entitled to claim a homestead exemption pursuant to article X, section 4 of the Florida Constitution. *Cain v. Cain,* 549 So.2d 1161 (Fla.Dist.Ct.App. 1989); *Estate of Melisi,* 440 So.2d 584 (Fla. Dist.Ct.App.1983); *Dean v. Heimbach,* 409 So.2d 157 (Fla.Dist.Ct.App.1982); *Brown v. Lewis,* 520 F.Supp. 1114 (M.D.Fla.1981).

### B. SEP/IRA

### FINDINGS OF FACT

On May 27, 1993, the Debtor, individually, adopted a Paine Webber Incorporated Prototype Simplified Employee Pension Plan (the "SEP/IRA" or "Plan"). On July 1, 1994, Scott K. Luttge M.D., P.A. was incorporated and on July 15, 1994, Scott K. Luttge M.D., P.A. passed a resolution adopting the Plan. Thereafter, in December, 1994, Paine Webber converted the SEP/IRA from the Debtor individually to Scott K. Luttge, M.D., P.A.

The Debtor is the sole shareholder, director, and 100% stockholder of Scott K. Luttge, M.D., P.A. and the sole eligible participant in the SEP/IRA. The SEP/IRA adopted by the Debtor is a prototype Paine Webber SEP/IRA plan. It received a favorable determination letter from the Internal Revenue Service in 1991 to the effect that the SEP/IRA was qualified under Section 408 of the Internal Revenue Code. In the Plan's documents, Paine Webber has represented that the SEP/IRA remained qualified at the time it was adopted by the Debtor. The Debtor has not made any amendments or changes to the prototype plan that was adopted.

There are no annual filing requirements or reports required in connection with the SEP/IRA. In addition, the Debtor has not borrowed any funds from the SEP/IRA and the Plan funds were invested in publicly traded

securities. The current amount of funds held by the SEP/IRA is approximately $147,008.68.

Jeffrey S. Kahn, Esq., the Debtor's expert testified that at the time the Plan was adopted by the Debtor, it satisfied all requirements of the Internal Revenue Code and that following its adoption, the Debtor operated the Plan in conformity with the Internal Revenue Code's requirements relating to vesting, participation, contributions, and discrimination. Kahn further testified that all of the Plan's investments were consistent with the requirements of the Internal Revenue Code and that the Debtor is the sole eligible participant under the SEP/IRA. The Trustee presented no expert testimony or evidence regarding the Plan's qualifications under the Internal Revenue Code. Accordingly, the Court finds that the Debtor's SEP/IRA complies with all applicable requirements of the Internal Revenue Code and is therefore a qualified plan under Internal Revenue Code § 408.

### CONCLUSIONS OF LAW

■ The Debtor claims that his Paine Webber SEP/IRA is exempt pursuant to Florida Statute § 222.21 which provides in relevant part:

> ... *any money or other assets payable to a participant or beneficiary from, or any interest of any participant or beneficiary in, a retirement or profit-sharing plan that is qualified under s. 401(a), s. 403(a), s. 403(b), s. 408, or s. 409 of the Internal Revenue Code of 1986, as amended, is exempt from all claims of creditors of the beneficiary or participant.*

Fla.Stat. ch. 222.21(2)(a) (1996).[1] The Trustee has raised two objections to the Debtor's claimed exemption. First, the Trustee claims that the Debtor, as the sole one hundred percent (100%) stockholder of the P.A. and its only officer, cannot be considered an employee and therefore the SEP/IRA is not an ERISA qualified plan. It is the Trustee's position that ERISA qualification is a condition precedent to the SEP/IRA being exempt under Florida law. The Trustee's second objection is that the SEP/IRA does not qualify under the applicable provisions of the Internal Revenue Code.

At the outset it should be noted that there has been a great deal of confusion surrounding the meaning of "ERISA-qualified." This confusion stems from the fact that when Congress enacted ERISA, various provisions of the Internal Revenue Code were passed and coordinated with ERISA's labor provisions in order to provide favorable tax benefits for employers who provided pension plans for their employees. *In re Kellogg,* 179 B.R. 379, 382–83 (Bankr.D.Mass.1995); *In re Taft,* 171 B.R. 497, 499 (Bankr.E.D.N.Y. 1994). However, under ERISA's statutory scheme, some plans may qualify for favorable tax treatment under the Internal Revenue Code without being subject to ERISA's labor provisions.[2] Such plans may be tax qualified under the Internal Revenue Code but not be "ERISA-qualified" plans.

The Trustee, in support of his objection that the Debtor's SEP/IRA must be ERISA-qualified, relies on several cases that involve plans which must be qualified under both ERISA and the Internal Revenue Code. *See e.g. In re Pruner,* 140 B.R. 1 (M.D.Fla.1992) (Pension plan qualified under § 401 of the Internal Revenue Code is not subject to ERISA where debtor was both the employer and the only employee participant in plan.); *In re Harris,* 188 B.R. 444 (Bankr.M.D.Fla. 1995) (Profit sharing plans under § 401 of the Internal Revenue Code must also comply with ERISA's labor provisions.). However, SEP/IRAs such as the Debtor's are not re-

---

1. The Eleventh Circuit has determined that state law pension plan exemptions relied upon by debtors in federal bankruptcy cases are not preempted by the Employee Retirement Income Security Act ("ERISA"). *In re Schlein,* 8 F.3d 745 (1993). In *Schlein,* the debtors were seeking to exempt assets in individual retirement accounts qualified under section 408(a) of the Internal Revenue Code and simplified employee pensions qualified under section 408(k) of the Internal Revenue Code. It was undisputed that the plans at issue were exempt under Florida law. *Id.* at 749.

2. For example, local governments and churches may establish plans in order to receive favorable tax treatment without being subject to the labor provisions of Title I of ERISA. 29 U.S.C. § 1003.

quired to comply with ERISA's labor provisions because they are established pursuant to section 408 of the Internal Revenue Code. 29 U.S.C. §§ 1003 & 1051(6). *See In re Kellogg,* 179 B.R. 379 (Bankr.D.Mass.1995); *In re Printy,* 171 B.R. 448 (Bankr.M.D.Mass. 1994); *In re Ewell,* 104 B.R. 458 (Bankr. M.D.Fla.1989). *But see In re Mehra,* 166 B.R. 393 (Bankr.E.D.Mo.1994). Furthermore, plans established under section 408 of the Internal Revenue Code are not subject to ERISA's "anti-inurement" requirement. This requirement is one of ERISA's labor provisions and it prohibits an employer from being a participant or beneficiary under a plan. 29 U.S.C. §§ 1103(b)(3)(B) & (c). By contrast, the plans at issue in the cases cited by the Trustee were established under § 401 of the Internal Revenue Code. Those plans were required to comply with ERISA's labor provisions, including the "anti-inurement" requirement, in order to remain tax qualified. 29 U.S.C. § 1103(c). Thus, the Trustee's argument that the Debtor's SEP/IRA must be ERISA qualified fails because no such requirement exists for this type of plan.

■ Finally, it is clear under a plain reading of Fla.Stat. § 222.21 that any plan qualified under sections 401(a), 403(a), 403(b), 408, or 409 of the Internal Revenue Code is entitled to be claimed as exempt property. In addition, there is no justification under either the case law or legislative history of Fla.Stat. § 222.21 which suggests that the exemption is limited only to retirement, pension, or other plans which must be qualified under ERISA. Thus, in the event that a plan does not qualify as retirement plan under ERISA, it may nevertheless be exempt under Fla. Stat. § 222.21 so long as it complies with the applicable provisions of the Internal Revenue Code. *In re Kellogg,* 179 B.R. at 388; *In re Mehra,* 166 B.R. at 399; *In re McDonald,*

100 B.R. at 600. Since the SEP/IRA need not be an ERISA qualified plan to be exempt, the remaining issue is whether the Plan complies with the Internal Revenue Code. As discussed *supra* in this Court's Findings of Fact, the Debtor's SEP/IRA has been properly adopted, operated, invested, and administered in compliance with the requirements of § 408 of the Internal Revenue Code. At the hearing the Trustee failed to either show or prove any events which would cause this Court to find otherwise. *In re McDonald,* 100 B.R. 598 (Bankr.S.D.Fla. 1989). Thus, the Debtor's SEP/IRA is a tax qualified plan under the Internal Revenue Code and the Debtor may successfully claim it as exempt property under Fla.Stat. § 222.21.

### *ORDER*

Based upon the foregoing it is hereby ORDERED and ADJUDGED that:

1. The Trustee's objections to the Debtor's exemptions are overruled.

2. The Debtor is entitled to claim the property located at 6221 N.W. 23rd Way, Boca Raton, Florida, as exempt homestead property pursuant to Article X, section 4, of the Florida Constitution.

3. The Debtor is entitled to claim the Paine Webber SEP/IRA account as exempt property pursuant to Fla.Stat. ch. 222.21(2)(a).

**DONE AND ORDERED.**