**In re Dennis MACFARLANE, Debtor.**

No. 9:04–BK–14841–ALP.

United States Bankruptcy Court,
M.D. Florida,
Fort Myers Division.

April 15, 2005.

Edward R. Miller, Miller and Hollander, Naples, FL, for Debtor.

### ORDER ON TRUSTEE'S OBJECTION TO DEBTOR'S AMEN DED CLAIM OF EXEMPTION (Doc. No. 16)

ALEXANDER L. PASKAY,
Bankruptcy Judge.

THE MATTER under consideration in this Chapter 7 case of Dennis MacFarlane (Debtor) is Trustee's Objection to Debtor's Amended Claim of Exemption filed by Robert E. Tardif (Trustee), the Chapter 7 Trustee of the Debtor. The Trustee objects to the Debtor's claim of exemption concerning his one-half interest in a residence located at 24761 Lyonia Lane, Bonita Springs, Florida. It is the Trustee's contention that the Debtor is not entitled to enjoy the protection granted to homesteads in Florida by Article X, Section 4 of the Florida Constitution because he abandoned his interest in the Bonita Springs property. The residential home is owned by the Debtor together with his non-debtor spouse Patricia MacFarlane as tenants by the entirety.

It is the Trustee's contention that during the relevant time, particularly at the time the Debtor filed his voluntary Petition for relief under Chapter 7 of the Bankruptcy Code on July 23, 2004, the Debtor no longer resided in the marital home located in Bonita Springs but, actually, resided in a trailer located at 2100 King Highway, Lot 403, Port Charlotte, Florida.

In opposition to the Trustee's contention, the Debtor maintains that the residential home located at 24761 Lyonia Lane, Bonita Springs, Florida, was and still is his homestead because he never abandoned his interest in the subject property.

The facts relevant to the resolution of the sole issue of whether the Debtor effectively abandoned his interest in the former marital home located in Bonita Springs, as established at the final evidentiary hearing, are as follows.

The Debtor is married to Patricia MacFarlane (Mrs. MacFarlane), a non-debtor, and owns the residential property located at 24761 Lyonia Lane, Bonita Springs, Florida, jointly with his wife as tenants by the entirety. The property was purchased by the couple in 1990 or 1991. It is without dispute that the residential property is the family residence where the Debtor and his wife Mrs. MacFarlane resided with their two children ages 11 and 9, at least until August 2003.

During the month of August 2003, Mrs. MacFarlane filed a Petition for Protection against the Debtor claiming domestic violence by the Debtor. On September 5, 2003, the Circuit Court of the Twentieth Judicial Circuit, in and for Lee County, Florida, issued a Final Judgment of Counter Injunction for Protection Against Domestic Violence with Minor Children (Case. No.: 03–007705DR A) (the Injunction). The Injunction was for a one-year period and was effective until September 4, 2004.

In its Injunction, the Circuit Court prohibited the Debtor from going within 500 feet of the marital residence or within 500 feet of Mrs. MacFarlane's place of employment. The Injunction further prohibited the Debtor from going within 100 feet of Mrs. MacFarlane's automobile or to have any contact with the minor children until the Debtor was specifically authorized by the court.

It is without substantial dispute that the Debtor moved out of the marital home sometime in August 2003, and initially stayed in the business premises of Colossal Promotions, a business in which the Debtor has been connected with and apparently worked for. Colossal Promotions is now defunct and no longer operates any business, however, at the time relevant the business was still in operation.

Several weeks after residing in the office of Colossal Promotions, the Debtor was offered an opportunity to rent a trailer located at 2100 Kings Highway, Lot 403, Port Charlotte, Florida. The trailer is owned by Dana Schroeder, an acquaintance of the Debtor. It appears that, notwithstanding the outstanding Injunction, the Debtor was contacted by Mrs. MacFarlane who agreed to meet with the Debtor on Christmas Eve for the sake of the children. In attempting to reconcile the martial problems, Mrs. MacFarlane permitted the Debtor to stay in the marital home as of December 24, 2003.

On January 5, 2004, Mrs. MacFarlane through her attorney filed a Motion for Psychiatric Evaluation. In her Motion, Mrs. MacFarlane contended that a Final Judgment of Injunction for Protection had been entered against the Debtor. Prior to and subsequent to the parties' separation, Mrs. MacFarlane discovered that the Debtor was a bisexual/cross-dresser. Also, prior to the parties' separation the Debtor threatened suicide, made unordinary outlandish allegations against Mrs. MacFarlane and, as a result, Mrs. MacFarlane became extremely concerned with the well-being and safety of the parties' two minor children. Based on the foregoing, Mrs. MacFarlane requested the Court to enter an order compelling the Debtor to submit to a psychiatric evaluation by Dr. Thomas Utley or Dr. Robert Newman (See Trustee's Exhibit No. 7).

On February 17, 2004, the Debtor filed a Motion to Change Counseling Group with the Circuit Court and sought permission to "move from LCC to a location in Port Charlotte," and listed the address of 2100 Kings Highway, Lot 403, Port Charlotte, Florida 38990. (See Trustee's Exhibit No. 5).

Notwithstanding that the Injunction was still outstanding and neither counsel for the Debtor nor for Mrs. MacFarlane filed a Motion to lift the Injunction, at a hearing held on March 8, 2004, The Family Court Motion Minutes indicate that the Debtor, Mrs. MacFarlane and their respective attorneys were present at the hearing. (See Trustees Exhibit No. 6).

On July 23, 2004, the Debtor filed his voluntary Petition for Relief under Chapter 7. In his Petition the Debtor stated that his address is 2100 Kings Highway, Lot # 403, Port Charlotte, Florida 33980. (See Trustees Exhibit No. 1). Schedule C of the Debtor's Petition reflected the following property claimed as exempt: Cash, miscellaneous wearing apparel, miscellaneous costume jewelry, one Term Life Insurance Policy, two dogs and personal papers. However, the Debtor did not claim his interest in the marital home located in Bonita Springs.

In due course, the U.S. Trustees Office scheduled the Meeting of Creditors pursuant to Section 341 of the Bankruptcy Code for September 7, 2004. On September 7, 2004, the Debtor appeared and was examined under oath and the meeting was concluded.

On October 22, 2004, the Debtor filed an Amended Schedule C and claimed for the first time his one-half interest in the property located at 24761 Lyonia Lane in Bonita Springs as his homestead, and exempt pursuant to Article X, Section 4 of the Florida Constitution.

The Trustee promptly challenged the Debtor's homestead exemption claim contending that on the date of filing the Petition, the Debtor was not residing in Bonita Springs. In addition, the Trustee contends that the Debtor had permanently left the Bonita Springs residence and had no intention of returning to the above-mentioned property. It is further the contention of the Trustee that the Debtor "only found himself residing on the property again due to Hurricane Charley." [Sic] (Doc. No. 16).

On November 18, 2004, the Debtor filed his Response to Trustee's Objection to Debtor's Amended Claim of Exemption and denied the Trustee's claim that he is not entitled to claim his interest in the Bonita Springs property exempt as his homestead. (Doc. No. 20).

The challenge of the homestead exemption claim is not new and is a contested matter which has been considered by several courts. The courts of this State are in full agreement that a challenge to the homestead claim should be construed liberally in favor of the one claiming the exemption and strictly against the party challenging the homestead claim. *In re Klaiber*, 265 B.R. 290, 292 (Bkrtcy. M.D.Fla.2001) (citing *In re Ehnle*, 124 B.R. 361, 362 (Bankr.M.D.Fla.1991). *See also In re Harrison*, 236 B.R. 784, 786 (Bankr.M.D.Fla.1999); *Matter of Hersch*, 23 B.R. 42 (Bankr.M.D.Fla.1982).

Courts also agree that the burden is on the objecting party to make a strong showing that the claimant is not entitled to the claimed exemption. *In re Goode*, 146 B.R. 860, 862 (Bankr.M.D.Fla.1992) (citing *Monson v. First National Bank of Bradenton*, 497 F.2d 135 (5th Cir.1974). *See also In re Imprasert*, 86 B.R. 721 (Bankr. M.D.Fla.1988)).

Once the property acquired the status of homestead, that characteristic continues to attach to the property unless the homestead has been abandoned. *In re Ehnle*, at 363. (citing *Marsh v. Hartley*, 109 So.2d 34 (Fla.App.1959). Thus, a permanent abandonment of the homestead with no intention to ever return to the property is abandoned as homestead, as a matter of law. *In re Goode, supra.*

As noted earlier, abandonment of a homestead may only be proved by strong showing of the debtor's intent never to return to the residence. However, a mere absence from the residence due to health, financial, or family reasons generally does not constitute abandonment. *In re Goode, supra.*

A case on point, which is extremely similar to the present case before this Court, is the case of *In re Luttge*, 204 B.R. 259 (Bankr.S.D.Fla.1997). In *Luttge*, the debtor vacated the marital residential property pursuant to a court granting the debtor's former spouse exclusive right to occupy the property until it could be sold. *Id.* at 260. When the debtor filed his voluntary Petition for Relief claiming the property as exempt homestead, the trustee objected and contended that the debtor had abandoned the property. The court in *Luttge* found that the debtor would have violated a court order had he remained in the marital residence, thus, the debtor's absence from the property did not constitute abandonment. *Id. See also Cain v. Cain*, 549 So.2d 1161 (Fla. 4th DCA 1989) (in order to show abandonment of the homestead, both the owners and the owners' family must have abandoned the homestead property).

In the case of *In re Harrison*, 236 B.R. 788 (Bankr.M.D.Fla.1999), the Circuit Court entered a Final Judgment of Dissolution of Marriage which adopted and incorporated by reference a Marriage and

Property Settlement Agreement entered into by the Debtor and her former spouse. The Settlement Agreement recognized that the martial home was on the market and the parties would agree upon the sale price. Pursuant to the Settlement Agreement, the Debtor would be entitled to receive the first $7,000 from the net proceeds from the sale of the martial residence.

The Debtor continued to reside in the martial home until July 1998, when she and the younger child relocated to a home in Naples, Florida. The Debtor's former spouse continued to reside in the former martial home with the parties' eldest child. In *Harrison*, the Debtor contended that she "was forced to find another residence because the eldest son's drug-related activities created a harmful environment for herself and the younger child." *In re Harrison*, 236 B.R. at 789. In *Harrison*, the court found that the Debtor was still the co-owner of the martial home and the Debtor continued to reside in the marital home until the eldest son's drug-related activities forced the Debtor and her younger child to leave the family residence. The court further noted that the Debtor's eldest child continued to reside in the martial home. *In re Harrison*, 236 B.R. at 790–791. In *Harrison*, the court held that "the speculative nature of the evidence regarding the Debtor's intent to sell the property in question and then use the proceeds to purchase a homestead in Florida does not validate the Trustee's claim of abandonment as that term has been construed by Florida courts," and the debtor was entitled to claim her interest in the family residence as her homestead property. *In re Harrison*, 236 B.R. at 791.

A case similar to the instant case is the case of *Nationwide Financial Corp. of Colorado v. Thompson*, 400 So.2d 559 (Fla. 1st DCA 1981). In *Nationwide*, after the parties became separated, the husband moved out of the martial residence while the wife and the parties' three minor children remained in the martial home, of which the parties were joint owners. The court in *Nationwide* rejected the contention of Nationwide Financial that the property was abandoned by the husband, relying on *Vandiver v. Vincent*, 139 So.2d 704 (Fla. 2d DCA 1962), where the court found that the Constitution does not require the owner claiming homestead exemption to actually reside in the residence, it was sufficient if the owners' family resided on the property. Furthermore; in order support a claim of abandonment, it must be shown that the property in question was abandoned by both the owner as well as the owner's family. In the case of *In re Estate of Melisi*, 440 So.2d 584, 585 (Fla. 4th DCA 1983), the court noted that in a case of a divorce where a party may be precluded from residing on the homestead with the family of which the owner may be head of household, the character of the property remains homestead and thereby, not abandoned.

In the present case, it is without dispute that the Debtor is still one-half owner of the homestead property located in Bonita Springs, Florida. It is further without dispute that at the time the Debtor filed his Petition he temporarily resided outside of the marital home, and Mrs. MacFarlane continued to reside in the Bonita Springs residence along with the parties' two minor children. It is also undisputed that the Debtor returned to and has been residing in the martial home since December 24, 2003.

Therefore, based on the foregoing, this Court is satisfied that the Trustee's claim that the Debtor had no intention of returning to the homestead property is speculative and that the Debtor is entitled to claim his one-half interest in the property located at 24761 Lyonia Lane, Bonita

Springs, Florida, as his homestead property.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Trustee's Objection to Debtor's Amended Claim of Exemption be, and the same is hereby, overruled. The Debtor's interest in the residence located at 24761 Lyonia Lane, Bonita Springs, Florida, is exempt pursuant to Art, X, Sec. 4 of the Florida Constitution, and is not subject to administration by the Trustee of the estate.